**EXHIBIT A**

THIRD JUDICIAL DISTRICT - SALT LAKE COUNTY DISTRICT COURT
SALT LAKE COUNTY, STATE OF UTAH


NATHAN A BLAINE et al. vs. TESLA

CASE NUMBER 250907109 Product Liability
_____

CURRENT ASSIGNED JUDGE
        KARA PETTIT


PARTIES
        Plaintiff - DEVEN G BLAINE

        Plaintiff - NATHAN A BLAINE
        Represented by: PAUL HALLIDAY JR

        Plaintiff - BENJAMIN N BLAINE

        Plaintiff - TRACY LEAVITT

        Plaintiff - DOUGLAS LEAVITT

        Defendant - TESLA


ACCOUNT SUMMARY
              Total Revenue Amount Due:        625.00
                       Amount Paid:            625.00
                     Amount Credit:              0.00
                           Balance:              0.00
        REVENUE DETAIL - TYPE: COMPLAINT - NO AMT S
                         Amount Due:            375.00
                        Amount Paid:            375.00
                      Amount Credit:              0.00
                           Balance:              0.00

        REVENUE DETAIL - TYPE: JURY DEMAND - CIVIL
                         Amount Due:            250.00
                        Amount Paid:            250.00
                      Amount Credit:              0.00
                           Balance:              0.00


CASE NOTE


PROCEEDINGS
08-28-2025   Case filed by efiler
08-28-2025   Judge KARA PETTIT assigned.
08-28-2025   Filed: Complaint:  Tort Complaint
08-28-2025   Fee Account created Total Due: 375.00
08-28-2025   Fee Account created Total Due: 250.00

```
08-28-2025   COMPLAINT - NO AMT S Payment Received:  375.00
08-28-2025   JURY DEMAND - CIVIL Payment Received:   250.00
08-28-2025   Filed: Return of Electronic Notification
11-28-2025   Filed return: Return of Service Tesla of UT upon DANI SNOW for
                  Party Served: NULL TESLA
                  Service Type: Personal
                  Service Date: November 25, 2025
                   Garnishee:
11-28-2025   Filed: Return of Electronic Notification
```

C. Blount   #  32251
ABC Legal
Date: 11.25  Time: 1144

Paul M. Halliday, Jr.
Halliday Law
1330 Butternut Rd.
Salt Lake City, UT  84124
    ed@phjrlaw.com

G. Lynn Shumway
Arizona Bar number 011714)
*To be admitted Pro Hac Vice*
Shumway Law PLLC
4647 N. 32nd Street, Suite 125
Phoenix, AZ 85018
shumway@carsafetylaw.com

I am the [ ] Plaintiff/Petitioner
        [ ] Defendant/Respondent
        [X] Attorney for the [X] Plaintiff/Petitioner  [ ] Defendant/Respondent
        and my Utah Bar number is 5076

---

## IN THE THIRD JUDICIAL DISTRICT COURT
## SALT LAKE COUNTY STATE OF UTAH
### 450 South State Street, Salt Lake City, UT  84114

| | |
|---|---|
| BLAINE, NATHAN A, et al. Plaintiff/Petitioner | **SUMMONS** |
| V. | **Case Number: 250907109** |
| TESLA OF UTAH, INC. | **Judge;  KARA PETTIT** |

The State of Utah to Tesla of Utah, Inc.:

You are summoned and required to answer the attached complaint/petition. **Within 21 days** after service of this summons, you must file your written, signed answer with the clerk of the court at the court address shown above.

**Within that 21 days** you must also mail or deliver a copy of your answer to the plaintiff's attorney at the address shown above. If you fail to do so, judgment by default may be taken against you for the relief demanded in the complaint or petition.

The Complaint has been filed with the court and explains what the other party is asking for in the lawsuit. Read it carefully.

You must file your Answer in writing with the court **within 21 days** of the date you were served with the Summons. The court's Finding Legal Help web page (**www.utcourts.gov/howto/legalassist/**) provides information about the ways you can get legal help, including the Self-Help Center, reduced-fee attorneys, limited legal help and free legal clinics.

Date: _10/15/2025_ Signed: _Paul M. Halliday Jr._
Paul M. Halliday, Jr.

Paul M. Halliday, Jr.
Bar no. 5076
Halliday Law
4330 Butternut Road
Salt Lake City, Utah 84124


G. Lynn Shumway (Arizona Bar
number 011714)
*To be admitted Pro Hac Vice*
shumway@carsafetylaw.com
**SHUMWAY LAW PLLC**
4647 N. 32nd Street, Suite 125
Phoenix, Arizona 85018
Telephone: 602.795.3720
Facsimile: 602.795.3728


*Attorneys for Plaintiff*

# IN THE THIRD JUDICIAL DISTRICTCOURT
## SALTLAKE COUNTY STATE OF UTAH

———

| | |
|---|---|
| Nathan A. Blaine, an individual, spouse and heir of Jennifer Lynn Blaine, deceased, and on behalf of Bronco Blaine, a minor, heir of Jennifer Blaine deceased; also Nathan A. Blaine as natural father and heir of Denali Blaine and Emily Blaine Leavitt; Deven Grant Blaine, an individual and Benjamin Nathan Blaine an individual, natural sons and heirs of Jeniffer Lynn Blaine, deceased; and Doulas Leavitt and Tracy Leavitt, husband and wife, natural parents and heirs of Zachary Leavitt; | No. CV<br><br>**Complaint for Damages**<br><br>1. **Strict Product Liability**<br>2. **Failure to Adequately Warn**<br>3. **Negligent Products Liability**<br>4. **Wrongful Death**<br><br>**JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| vs. | |
| **TESLA, Inc. a Delaware corporation; TESLA OF UT, INC., a Texas corporation; DOES I-X; ABC ENTITIES, I-X,** | |
| Defendants. | |

1

Plaintiff Nathan A. Blaine, an individual, and on behalf of his minor son Bronco N. Blaine, and Deven Grant Blaine and Benjamin Nathan Blaine individuals, all of whom are statutory heirs of Jennifer Lynn Blaine, Deceased bring this complaint against the defendants.

Plaintiff Douglas Leavitt and Plaintiff Tracy Leavitt, husband and wife, the natural parents and statutory heirs of Zachary Leavitt bring this complaint against the defendants.

Plaintiffs, by and through undersigned counsel, and for their Complaint against all Defendants allege as follows:

## THE PARTIES

1.      Plaintiff Nathan Blaine, on behalf of himself and his minor son Bronco Vincent Blaine, Benjamin Nathan Blaine and  Deven Grant Blaine, natural born children of Jennifer Lynn Blaine (hereinafter "Blaine Plaintiffs"), seek damages for the wrongful death of Jennifer Lynn Blaine (Deceased).

2.      Jennifer Lynn Blaine was the wife of Nathan Blaine and mother of Benjamin Blaine, Deven Blaine, and Bronco Blaine.

3.      Emily Blaine Leavitt is the natural daughter of Nathan Blaine.

4.      Denali Blaine is the natural daughter of Nathan Blaine.

5.      Plaintiffs Douglas Leavitt and Tracy Leavitt ("Leavitt Plaintiffs") seek damages for the wrongful death of their son, Zachary Leavitt.

2

6.     The Blaine Plaintiffs and the Leavitt Plaintiffs are collectively known hereinafter as "Plaintiffs."

7.     Jennifer Lynn Blaine is the natural mother of Benjamin Blaine, Devon Blaine and Bronco Blaine who are her statutory heirs.

8.     The Leavitt Plaintiffs are the natural parents of Zachary Leavitt and are the statutory heirs in the wrongful death claim brought by the them in this complaint.

9.     Plaintiffs have significant damages.

10.    At all times relevant to this complaint, the Blaine Plaintiffs were all residents of Box Elder County, Utah.

11.    At all times relevant to this complaint, the Leavitt Plaintiffs were residents of Davis County, Utah.


12.    Defendant TESLA, Inc. ("Tesla") is a Delaware corporation that had its principal place of business in Palo Alto, California, from approximately 2003 until December 1, 2021, at which point it moved its principal place of business to Austin, Texas.

       Defendant TESLA OF UT, Inc., is a Texas corporation licensed to do business in the State of Utah and doing business in the State of Utah.

13.    Tesla, Inc. designs, develops, manufactures, tests, markets, distributes, sells, and leases electric vehicles under the brand "Tesla." It also offers services related to those vehicles, including designing, developing, and periodically sending over-the-air updates for advanced driver assistance systems ("ADAS") software in Tesla vehicles.

14.    Service provided by Tesla on the Blaine Model X in Utah affected the performance of the Lane Departure Prevention features on the Model X in the seconds leading up to the Model X's collision with the Kenworth Truck.

15.    Tesla delivered updates on the Blaine Tesla Model X in Utah, analogous to providing hands on service in Utah, that are proximate causes of the Model X leaving its eastbound lane in the seconds before it was crushed by the Kenworth Truck in the westbound lane of Idaho SH33 on September 1, 2023.

16.    Tesla was the manufacturer of a Tesla Model X (hereinafter "Tesla X" and/or "Model X") (VIN No. 7SAXCAE58NF344140), also sometimes referred to in this Complaint as the "Subject Vehicle."

17.    Tesla Inc. distributed the Model X to Nathan and Jennifer Blaine in the State of Utah.

18.    TESLA of UT, Inc., upon information and belief participated in the distribution of the Model X to Nathan and Jennifer Blaine in the State of Utah.

### DOE PARTIES

19.    The true names or capacities, whether individual, corporate, associate, or otherwise of Defendants 1-100, inclusive and/or the factual bases of liability of Defendants Does 1 through 100 are unknown to Plaintiffs. Plaintiffs will seek to amend this Complaint to allege the true names and capacities when the same have been ascertained.

20.    Plaintiffs are informed and believe that each defendant named herein as a DOE is responsible in some manner for the events, occurrences, and circumstances that

1  form the basis of this suit.  In that each defendant designated herein as a DOE is

2  responsible, negligently or in some other actionable manner, for the events and

3  happenings hereinafter referred to and caused injuries and damages proximately thereby

4

5  to Plaintiffs either through said Defendants' own negligent conduct or through the

6  conduct of their agent, servants, or employees.  As used herein the term "Defendants"

7  mean all defendants, including DOES 1 to 100, both jointly and severally, and referenced

8

9  by name to any named Defendant shall include all Defendants, both jointly and severally.

10         21.     Plaintiffs are informed and believe and thereon allege that, at all times,

11  mentioned herein, Defendants and each of them, were the agents, servants, employees,

12  joint venturers, or contractors of their co-defendants, and in doing the acts herein alleged

13

14  that they were acting within the scope, course and authority of said agency, employment,

15  contract, or joint venture.  Each and every defendants, as aforesaid, when acting as a

16  principal, actively participated in, controlled, authorized, aided and abetted, incited,

17  compelled, coerced, directed, or subsequently ratified and/or adopted, each and all of the

18

19  acts or conduct alleged herein, with full knowledge of all the facts and circumstances,

20  including, but not limited to, full knowledge of each and all of the violations of Plaintiffs'

21  rights and the damages to Plaintiffs proximately caused thereby.

22

23

**JURISDICTION & VENUE**

24

25         22.     The Utah District Court has jurisdiction over this action and pursuant to 78A-

26  5-102 in "all matters civil and criminal."

27         23.     Venue is proper in this District because it is where Tesla has a place of

28  business and delivery of the vehicle to the Blaines happened.

5

24.    The Plaintiffs' claims in this complaint are brought under the Utah Product Liability Act.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**I.    Tesla Autopilot has Driver Assistance Features,  features that should prevent inadvertent lane departures.**

25.    Tesla represented to the Nathan and Jennifer Blaine that the Model X that is the subject of this complaint is equipped with "Lane Departure Warning" (LDW), "Lane Keeping Assist" (LKA) and "Lane Centering Assistance" (LCA).

26.    Alternative designs of  software and algorithms, that would have operated a Lane Keeping Assist and/or Lane Centering function using the camera and computing capabilities available for use in model year 2022 vehicles, were available on the Subject Vehicle for Tesla software and algorithms to use that would have automatically kept the Model X Tesla with Plaintiffs' loved ones in it in its eastbound lane in the area where the collision happened if they were designed appropriately.

27.    Alternative designs of LDW, LKA and LCA software and algorithms, that would have operated a Lane Departure Warning, Lane Keeping Assist and/or Lane Centering Assist functions using the camera and computing capabilities available for use in model year 2022 Teslas, were available for Tesla to use that would have provided an adequate and effective warning to Jennifer Blaine that the Model X Tesla she was driving was about to leave its lane.

28.    Alternative designs of LDW, LKA and LCA software and algorithms, that would have operated a Lane Departure Warning, Lane Keeping Assist and/or Lane

6

Centering Assist functions using the camera and computing capabilities available for use in model year 2022 Teslas, were available for Tesla to use that would have provided an adequate and effective automatic steering to keep the Model X that Jennifer Blaine was driving in its eastbound lane.

29. Adequate Lane Departure Warning alerts are effective at assisting drivers in avoiding inadvertent lane departures.

30. In cabin driver monitoring camera systems give Advance Driver Assist Systems the ability to provide significantly earlier Lane Departure Warning alerts when the monitoring system identifies that the driver is not attentive to the driving task as the driver's vehicle is getting closer to a lane line.

31. In cabin driver monitoring camera systems give Advance Driver Assist Systems the ability to provide significantly earlier Lane Keeping and Lane Centering inputs to the vehicle when the monitoring system identifies that the driver is not attentive to the driving task as the drivers vehicle is getting closer to a lane line.

32. Autopilot is a suite of advanced driver assistance features that are intended to make the Model X Tesla driving safer and less stressful.

33. Autopilot was installed on the Tesla Model X that is the subject of this lawsuit.

34. The Tesla Model X at issue in this complaint is equipped with cameras which monitor the surrounding area and detect road markings.

35. The Tesla Model X at issue in this complaint is equipped with cameras mounted on the front, rear, left and right sides of the Model X.

7

36.    The Tesla Model X at issue in this complaint is equipped with a cabin camera, mounted in the rear-view mirror that monitors driver attentiveness.

37.    The Tesla Model X at issue in this complaint is equipped with a cabin camera, mounted in the rear-view mirror that monitors driver eye lid position.

38.    The Tesla Model X at issue in this complaint is equipped with a cabin camera, mounted in the rear-view mirror that monitors the direction its driver's face is directed toward in real time.

39.    The camera mounted in the cabin of the Model X at issue in this complaint was installed because of Tesla's understanding that drivers of automobiles sometimes become inattentive during a driving event even when the driver intends to remain fully attentive to the driving task.

40.    Tesla employees who made the decision to install a cabin mounted camera to monitor the attentiveness of Model X drivers understood at the time of deciding to add the driver monitoring camera that even some very conscientious Model X drivers sometimes will benefit from the presence of a Model X driver monitor camera and software that provides effective alerts to drivers of their becoming inattentive during a driving event or trip.

41.    Tesla employees who designed and added the camera based driver monitoring systems to the Model X at issue in this complaint understood that sometimes conscientious drivers need escalating warnings to remind the drivers to keep their hands on the wheel and/or pay attention to the road.

42.    Tesla employees who designed and added the camera based driver monitoring systems to the Model X at issue in this complaint understood that sometimes

conscientious drivers need escalating warnings to remind the drivers to keep their hands on the wheel and/or pay attention to the road whether their Autopilot features is being used or not being used.

43.    The Tesla Model X at issue in this complaint is equipped with the capability of showing drivers a series of escalating warnings reminding the drivers to keep their hands on the wheel and pay attention to the road at the very split second that such a warning is needed.

44.    The Tesla Model X at issue in this complaint is equipped with a feature Tesla calls "Autosteer" that Tesla claims has the capability of "intelligently keeping Model X in its lane."

45.    There were well designed LDW, LKA and LCA systems available for use in model 2022 vehicles that had the capability to successfully assist a driver in negotiating the eastbound lane of SH33's southward curve that was a factor in the Model X Tesla leaving its intended eastbound driving lane of travel in the seconds leading up to its collision with the westbound Kenworth Truck in the westbound lane of SH33.

46.    The Tesla Model X at issue in this complaint is equipped with Autosteer that Tesla claims detects lane markings and the presence of vehicles and objects to intelligently keep Model X in its driving lane.

47.    The Tesla Model X at issue is supposed to use its Autosteer feature to keep it in the center of the driving lane it is using.

48.    Tesla represented to the Blaines that the Tesla Model X at issue in this complaint is equipped with the ability to drive to a destination that involves following curves in the road.

9

49.    Tesla claims that the Tesla Model X at issue in this complaint has the capability of autonomously negotiating curves in roadways that are not "sharp curves".

50.    The curve in SH33 where the Model X left its eastbound lane and was hit by the Kenworth Truck is not a sharp curve.

51.    The Tesla Model X at issue in this complaint is equipped with the capability of identifying what lane markings indicate about whether a lane change is permitted at the vehicle's then current location.

52.    The Tesla Model X at issue in this complaint is alleged by Tesla to be equipped with features that Tesla claims have the capability to monitor the condition of lane markings during the time it is moving from one lane to another lane.

53.    The Tesla Model X at issue in this complaint is equipped with features that Tesla claims have the ability to make the vehicle abort a lane change and return to its "original driving lane."

54.    Tesla employees who designed the Autosteer and the "escalating warnings" for inattentive drivers had an understanding that some normally very good Model X drivers would temporarily become inattentive and need Autosteer and/or escalating warnings to assist them in staying in their "original driving lane."

55.    Tesla employees who were involved in designing Autosteer, Lane Assist and Lane Departure Warning features on Teslas were aware before the manufacture of the Tesla Model X at issue in this complaint that Tesla Model X drivers sometimes would become inattentive while driving a Model X and need Autosteer, lane departure warning, lane assist and/or in cabin camera driver monitoring escalating warnings to avoid the

Tesla Model X they are driving from being in a collision that would involve damage, serious injury or death.

56.     It is Tesla's responsibility to design and equip the Model X that is the subject of this complaint with a non-defective Autosteer feature.

57.     It is Tesla's responsibility to design the Model X that is the subject of this complaint with Autopilot features that can and do accomplish the tasks Tesla's Model X Owner's Manual states Autopilot can accomplish.

58.     The Tesla Model X at issue in this complaint is equipped with an Autopilot system that when disengaged leaves the Model X less safe than it would have been with the Autopilot engaged.

59.     Disengaging or cancelling Autopilot deprives Model X users and other roadway users in the area of the Model X of the safety benefits of Autopilot ADAS related features.

60.     Disengagement of Autopilot should not reduce the effectiveness of safety features the vehicle is equipped with.

61.     The Tesla Model X at issue in this complaint is equipped with an Autopilot feature that can navigate highway curves, which are not "sharp curves" at between 18 mph and 85 mph.

62.     If The Tesla Model X at issue in this complaint is not equipped with the capability to drive to a destination by following curves in the road, Tesla had the capability at the time of the manufacture of this Tesla Model X to equip this Tesla with the ability to drive to a destination by following curves in the road.

63. The Tesla Model X at issue in this complaint is equipped with the capability to use its Autopilot features to guide this Model X from a highway's on-ramp to off-ramp, including performing lane changes, navigating interchanges, and taking the correct exit.

64. The Model X Tesla that is the subject of this complaint, failed to provide Jennifer Blaine, the occupants of the Model X Tesla she was driving and the Plaintiffs the Tesla written description of benefits of Autopilot, Autosteer, cabin camera driver attention monitoring and escalating warnings, LDW, LKA and LCA features that were reasonably available for the Model X's model year for keeping the vehicle in its intended driving lane and/or assisting its drivers in keeping the vehicle in the intended driving lane.

65. The Model X Tesla's failure to provide its occupants and Plaintiffs the benefits available of a non-defective "Autopilot" feature performance, Autosteer, driver monitoring and "escalating warnings" to an inattentive driver, LDW, LKA and/or LCA, if those features are properly designed and manufactured, is a proximate cause of the death of Jennifer Blaine, Denali Blaine, Emily Blaine Leavitt and Zachary Leavitt.

66. The Model X Tesla that is the subject of this complaint, is dangerous to an extent beyond which was contemplated by the ordinary and prudent buyer, consumer, or user of that vehicle considering the product's characteristics, propensities, risks dangers, and uses together with the actual knowledge, training, or experience possessed by Nathan Blaine.

67. The Model X Tesla that is the subject of this complaint is dangerous to an extent beyond which was contemplated by the ordinary and prudent buyer, consumer, or user of that vehicle considering the product's characteristics, propensities, risks dangers ,

12

1  and uses together with the actual knowledge, training, or experience possessed by Jennifer

2  Blaine.

3        68.    The Model X Tesla that is the subject of this complaint is dangerous to an

4  extent beyond which was contemplated by the ordinary and prudent buyer, consumer, or

5

6  user of that vehicle considering the product's characteristics, propensities, risks dangers,

7  and uses together with the actual knowledge, training, or experience possessed by Denali

8  Blaine.

9

10       69.    The Model X Tesla that is the subject of this complaint is dangerous to an

11 extent beyond which was contemplated by the ordinary and prudent buyer, consumer, or

12 user of that vehicle considering the product's characteristics, propensities, risks dangers ,

13
   and uses together with the actual knowledge, training, or experience possessed by Emily
14
15 Blaine Leavitt and Zachary Leavitt.

16       70.    The Model X Tesla that is the subject of this complaint, is dangerous to an

17 extent beyond which was contemplated by the ordinary and prudent buyer, consumer, or

18
   user of that vehicle considering the product's characteristics, propensities, risks dangers ,
19
20 and uses together with the actual knowledge, training, or experience possessed by the

21 Leavitt Plaintiffs.

22       71.    The Model X Tesla that is the subject of this complaint is dangerous to an

23 extent beyond which was contemplated by the ordinary and prudent buyer, consumer, or

24
   user of that vehicle considering the product's characteristics, propensities, risks dangers ,
25
26 and uses together with the actual knowledge, training, or experience possessed by

27 Benjamin and Devon Blaine.

28

13

72.     The Model X Tesla that is the subject of this complaint, is dangerous to an extent beyond which was contemplated by the ordinary and prudent buyer, consumer, or user of that vehicle considering the product's characteristics, propensities, risks dangers, and uses together with the actual knowledge, training, or experience possessed by the Leavitt Plaintiffs.

73.     The design of the Model X Tesla involved in the subject collision failed to accomplish the lane keeping task at the time and location of the subject Model X Tesla with the Kenworth truck colliding, that Tesla written material acknowledge can be performed with available technology.

74.     ADAS designs that are capable of keeping a vehicle like and including a 2022 Model X Tesla in its lane through the southern curve where this collision happened were and are technologically and financially feasible.

75.     ADAS simulation programs available for use prior to model year 2022, contain software and/or algorithms that are capable of guiding host vehicles through curves like the one in which the subject Tesla left its lane leading to the collision at the speed range the Tesla was traveling at when it left its intended driving lane.

76.     There are non-Tesla production vehicles sold in and before model year 2022 that have Lane Keeping Assist and/or Lane Centering Assist systems that would have made their host vehicle safety negotiate the south ward curve in eastbound SH33 where the subject Model X Tesla left its intended driving lane leading up to the collision without driver input.

77.     Tesla could have purchased from suppliers of ADAS systems, Lane Departure Warning, Lane Keep Assist and/or Lane Centering Assist systems that if

14

installed in the subject 2022 Model X Tesla would have prevented the vehicle from leaving its lane and colliding with the Kenworth Truck.

78.    The Model X Tesla driven by Jennifer Blaine at the time it collided with the Kenworth Truck was and is unreasonably dangerous and defective under the Utah Product Liability Act.

79.    At the time the Model X was sold by Tesla to the Blaines the Model X was unreasonably dangerous and defective because of the conditions described in this complaint.

80.    The unreasonably dangerous and defective conditions of the Model X described in this complaint are proximate causes of the fatal injuries suffered by Jennifer Blaine, Denali Blaine, Emily Blaine Leavitt and Zachary Leavitt.

**I.    All of the Blaine family members in the Tesla died in the accident.**

81.    Jennifer Blaine and Nathan Blaine were just two members of the public exposed to Tesla's long-term advertising campaign designed to persuade the public that its vehicles were capable of driving themselves.  Not only were they aware that the technology itself was called "Autopilot," they saw, heard, and/or read many of Tesla or Musk's claims in the news media.

82.    Consumers believe the "Autopilot" feature with the "full self-driving" update was safer than a human driver and can be trusted to safely navigate public highways autonomously in circumstances like those found on Idaho SH33 in the area of the Subject Vehicle's collision with the Kenworth Truck .

83.     Relying on this belief—which was the direct result of the product name itself and Tesla's long-term advertising campaign—the Consumers purchase Tesla Model Xs,

84.     The Blaines purchased their Model X from Tesla with the order being placed on February 15, 2021.

85.     The Blaines paid extra for "Full Self Driving" for the subject vehicle.

86.     Based on representations the Blaines heard made by Musk and Tesla materials about the subject vehicle, the Blaines believed the Subject Vehicle was a safer driver than a human driver of convention vehicles without driver assistance features.

87.     After work on September 1, 2023, Decedent Jennifer Blaine drove home to pick up the kids (Emily, Zachary and Denali) and they were to meet their father/father-in-law/husband, Nathan Blane for a hike in the Tetons.  Jennifer and the kids stopped in Idaho Falls to have dinner and charge the Tesla before traveling toward a location near Driggs, planning to set up a camp there and to meet up with Nathan and Bronco later.

88.     Jennifer, Denali, Emily and Zachary were driving towards Driggs Idaho to "camp near Driggs and meet Nathan after he finished his hike."   (Idaho State Police Report I23000824).

89.     At approximately MP 125 on SH 33, the Model X Tesla crossed the yellow center lines at the gentle southward curve in SH 33 so that the direction it had been traveling on the straight eastbound travel lane of the Tesla took it through and across the SH 33 westbound travel lane wherein a 2007 Kenworth semi-truck filled with grain weighing 90,000 lbs. collided with the Model X.

90.     The Model X Tesla was equipped with ineffective Autopilot and ineffective ADAS systems; an ineffective Lane Departure Avoidance system which is supposed to

apply "corrective steering to keep your vehicle in your current lane" and/or an ineffective Emergency Lane Departure Avoidance system that is supposed to "steer your vehicle back into your driving lane when it detects that your vehicle is departing its lane and there could be a collision".

91.     The Subject Vehicle's LDW, LKA and LCA systems defectively failed to assist the Subject Vehicle stay in the eastbound lane.

92.     The Blaine family occupants died as a result of the Model X Tesla's Autopilot and ADAS systems failing to provide the driver assistance in Lane Keeping Assist, Lane Centering Assist and/or Lane Departure Warning services that Tesla described being present in the Model X.

The Model X Tesla sustained major damage, its front end being crushed rearward crushing all of the occupants of the Tesla X, along with the family dog due to the weight of the size of the Kenworth truck.

93.     At all relevant times, Defendants TESLA, Tesla UT and DOES 1-30 were and are engaged in the business of manufacturing, engineering, fabricating, designing, assembling, importing, distributing, selling, inspecting, servicing, repairing, marketing, advertising, warranting, modifying, equipping, and leasing, renting, wholesaling, and selling the Subject Vehicle.  Defendants knew, or in the exercise of reasonable care should have known, the Subject Vehicle would be used in a manner described herein, without inspection for defects in its function, parts, or design, including, but not limited to, as to Autopilot mode, and needing Lane Departure Prevention features to function for use in the State of Utah and elsewhere.  At all relevant times, the Subject Vehicle, and similar

vehicles, were designed, manufactured, marketed, advertised, and placed into the stream of commerce by TESLA, Tesla UT, and DOES 1-3-, and each of them, and their officers, directors, employers salespeople, contractors, and/or managing agents.

94.     At all times relevant, the Subject Vehicle contained design, manufacturing, and warning defects which posed an unreasonable risk of injury or death to consumers, and others similarly situated, and to other motorists sharing the road with TESLA's vehicles, including the Subject Vehicle.  The Subject Vehicle and each of its component parts were unsafe and dangerous when used for its intended use and reasonably foreseeable misuses by reason of unreasonably dangerous defects in its design and/or manufacturing and/or failure to warn by said Defendants, and each of them.

95.     The Subject Vehicle was used by the Blaines on or about September 1, 2023, as intended and in a reasonably foreseeable manner.  The Subject Vehicle did not perform as TESLA, Tesla UT and DOES 1-30 claimed the vehicle would perform and as ordinary consumers expect these vehicles to perform.  Tesla's Autopilot, ADAS, LDW, LKA, LCA and other driver assists features described in this complaint did not perceive, react to, and avoid a commonly occurring roadway and traffic condition and hazards, including but not limited to the subject vehicle crossing the yellow center lines nor did it take proper action to prevent the crossing of the center lines and keeping it safely in its eastbound lane of travel at the area that the Model X Tesla was overrun by the Kenworth Truck traveling in the westbound lane at that location.

96.     The Subject Vehicle and similar vehicles manufactured and/or sold by TESLA and DOES 1-30 are unreasonably dangerous, defective and unsafe, including but not limited to, as a result of Telsa conferring to their customers a false sense of security that

its Autopilot, Full Self Driving and lane departure prevention ADAS features have autonomous and assistive functionality or are otherwise safe in conditions and roadway configurations involved in this complaint, including at freeway and highway speeds.

97.    The Subject Vehicle and similar vehicles manufactured and/or sold by TESLA, Tesla UT and DOES 1-30 are deceptive and unsafe, including but not limited to, as a result of TESLA conferring to their customers a false sense of security that the Lane Departure Avoidance nor the Emergency Lane Departure Avoidance functionality or is otherwise safe in all traffic conditions and configurations, including at freeway and highway speeds.  As a foreseeable consequence, TESLA's customers believe they are operating vehicles with an effective ADAS system giving them a false sense of security.

98.    Ordinary drivers of automobiles sometimes have temporary diminished attention to the roadway and diminished capacity to avoid lane departure collisions.

99.    The driver assistance systems referenced in this complaint are designed specifically to assist drivers who are experiencing temporary diminished attention to the roadway.

100.    Plaintiffs are informed and believe and herein allege that prior to September 1, 2023, Defendants knew and were aware of the manufacturing, design, and warning defects, including but not limited to those related to Autopilot, Lane Departure Avoidance and/or Emergency Lane Departure Avoidance, including LDW, LKA and LCA and driver monitoring.

101.    Defendants knew or should have known of the dangerous and defective nature of the Subject Vehicle from their own internal inspections, testing, and quality control procedures, and from prior collisions, lawsuits, warranty claims, and/or news

articles.  Defendants should have put in place features to limit the use and/or protect their consumers and others on the roadway against these dangers.

102.    Despite their awareness of the defects in the Subject Vehicle, Defendants, and each of them, failed to warn the Blaines and/or other purchasers and users of TESLA's vehicles of said dangers, defects, and limitations of the Subject Vehicle, and failed to properly inform their consumers and others of the defects in Autopilot, Lane Departure Avoidance and/or Emergency Lane Departure prevention systems and LDW, LKA and LCA.

103.    TESLA falsely and misleadingly promoted the functionality, safety, and autonomy of Autopilot and other ADAS technology as alleged herein.

**First Cause of Action**
**Strict Products Liability**
(Against Defendant Tesla, Tesla UT and Does 1-50)

104.    Plaintiffs incorporate herein each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

105.    Plaintiffs were harmed by the Subject Vehicle, a product that is manufactured, distributed, marketed, advertised, and sold by Defendants TESLA, Tesla UT and DOES 1-50.

106.    At the time Defendants sold the Subject Vehicle, the Subject Vehicle was dangerous, hazardous, and unsafe both for its intended use and/or for its reasonably foreseeable misuses.  The Subject Vehicle contained inherent vices and defects both in

1  design and manufacturing, and by Defendants' failure to warn of the Subject Vehicle's

2  defects and limitations, all of which Defendants were aware at all times.

3      107.    At all relevant times, Defendant TESLA UT, and DOES 1-50 directly and/or

4

5  indirectly claims Autopilot is a combination of hardware and software that performs the

6  dynamic driving task.  Defendant TESLA, Tesla UT and DOES 1-50 advertise, market, and

7  claim that Autopilot is safe and as good as or better than a human driver at detecting

8  hazards, changing conditions, and traffic.  Consumers are informed and expect that

9
   TESLA's "Autopilot" vehicles will drive safely and autonomously, and will steer,
10

11 maneuver, brake, accelerate, lane keep, detect, avoid, and adapt to hazards and changing

12 traffic conditions in real time without human input.  At all relevant times, TESLA

13 distributed promotional materials and videos that depict TESLA's vehicles without a

14
   natural person in the vehicle.  TESLA's advertising, marketing, and promotions depict
15

16 Autopilot as an autonomous function that is safe in any condition.

17     108.    TESLA refused to implement technology that would warn drivers to remain

18 focused on driving.  For example, other companies have implemented technology to ensure
19

20 drivers are still engaged when utilizing SAE Level 2 ADAS technology, since evidence

21 shows the average driver tends to rely too much on some SAE Level 2 technology.  To that

22 end, General Motors and Ford use infrared cameras that closely track the driver's eyes and

23 sound warning  chimes if a driver looks away from the road for more than two or three

24
   seconds.  TESLA did not initially include such a driver monitoring system in its vehicles
25

26

27

28

and later added only a standard camera that is much less precise than infrared cameras in eye tracking.[1]

109.    Defendants knew the Subject Vehicle was to be purchased and used without inspection for defects by the user of the vehicle, including the Blaines. Defendants did not include sufficient instructions and/or warnings of the potential safety hazards, including but not limited to the Blaine family members.

110.    In manufacturing, distributing, marketing, advertising, and selling its vehicles, including the Subject Vehicle, TESLA acted with conscious disregard for the safety of others.  Specifically, TESLA represented to other—including the Blaines—that the Tesla Model X was capable of providing effective driver assistance features.

111.    Further, TESLA intentionally misrepresented the safety of their vehicles and ADAS software.  TESLA did so to generate excitement about the company's vehicles and thereby improve its financial condition by, among other things, attracting investment, increasing sales, avoiding bankruptcy, driving up TESLA's stock price, and helping to establish TESLA as a dominant player in the electric vehicle market, all at the expense of the public's safety.

112.    The Subject Vehicle's failure to perform safely and as expected and the Defendants' malice, oppression, and/or fraud was a substantial factor in—and a direct and proximate cause of—the collision between the Subject Vehicle and the Kenworth Truck.

---

[1] Neal E. Boudette, "Federal safety agency expands its investigation of Tesla's Autopilot system," *The New York Times* (June 9, 2022) *available at* https://www.nytimes.com/2022/06/09/business/tesla-autopilot-nhtsa-investigation.html

113.    As an approximate result of the unreasonably dangerous design of the Tesla Model X Autopilot features, Full Self Driving features, Lane Departure Prevention features, LDW, LKA and LCA and driver monitory system defects in the Subject Vehicle, Plaintiffs all suffered damages in an amount to be proven at trial.

**Second Cause of Action**
**Negligence Products Liability**
(Against Defendant Tesla, Tesla UT and Does 1-30)

114.    Plaintiffs incorporate herein each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

115.    Plaintiffs were harmed by the Subject Vehicle, a product that is manufactured, distributed, marketed, advertised and sold by Defendants TESLA, Tesla UT and DOES 1-30.

116.    At the time Defendants sold the Subject Vehicle, the Subject Vehicle was unreasonably dangerous, hazardous, and unsafe both for its intended use and/or for its reasonably foreseeable misuses. The Subject Vehicle contained inherent vices and defects both in design and manufacturing, by the Subject Vehicle failing to provide an adequate warning at the time that the Subject Vehicle began to leave its eastbound lane leading to the collision and by Defendants' failures to provide adequate warning of the Subject Vehicle's defects and limitations, of which they were aware at all relevant times.

117.    Defendants knew the Subject Vehicle was to be purchased and used without inspection for defects by the users of the vehicle, including but not limited to the Blaine family. Defendants did not include sufficient instructions and/or warnings of the potential

safety hazards, including but not limited to the Blaine family at either the time before the Subject Vehicle began to leave its eastbound lane in the seconds before the collision or at the time that the Subject Vehicle was beginning to leave that eastbound lane leading to the collision.

118.    Defendants were negligent in the design, manufacturing, installation, promotion, instructions, and warnings related to the Subject Vehicle.

119.    TESLA refuses to implement technology that would warn drivers to remain focused on driving.  For example, other companies have implemented technology to ensure drivers are still engaged when utilizing SAE Level 1 and 2 ADAS technology.  To that end, General Motors and Ford use infrared cameras that closely track the driver's eyes and sound warning chimes if a driver looks away from the road for more than two or three seconds.  TESLA did not initially include such driver monitoring system in its vehicles and later added only a standard camera that is much less precise than infrared cameras in eye tracking.[2]

120.    In manufacturing, distributing, marketing, advertising, and selling its vehicles, including the Subject Vehicle, TESLA acted with conscious disregard for the safety of others.  Specifically, TESLA represented to others—including the Blaine Family—that the Tesla Model X was capable of fully autonomous driving even though Tesla knew the vehicle sometimes failed to be able to negotiate a curve or even failed to provide a Lane Departure Warning of an inadvertent lane leaving event.  Moreover, TESLA

---

[2] Neal E. Boudette, "Federal safety agency expands its investigation of Tesla's Autopilot System," *The New York Times* (June 9, 2022), *available at* https://www.newyorktimes.com/2022/06/09/business/tesla-autopilot-nhtsa-investigtaion.html

24

knew that others—including the Blaine family—would sometimes need Tesla's ADAS features to operate their vehicles safely on public roadways.

121.    The Subject Vehicle's failure to perform safely and as expected and the Defendants' malice, oppression, and/or fraud was a substantial factor in—and a direct and proximate cause of—the collision between the Subject Vehicle and Kenworth Truck.

122.    As a proximate result the failure of the Subject Vehicle to provide the simple driver assistance of LDW, LKA and/or LCA the collision between the Subject Vehicle and the Kenworth Truck happened and Plaintiffs suffered damages from the loss of Jennifer Blaine, Denali Blaine, Emily Blaine Leavitt and Zachary Leavitt in an amount to be proven at trial.

### Third Cause of Action
**Wrongful Death**
(Against Defendant Tesla and Does 1-100)

123.    Plaintiffs incorporate herein each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

124.    As a direct and proximate result of the actions and inactions of Defendants as alleged herein, Nathan Blaine's wife, Jennifer Lynn Blaine; his only daughters, oldest daughter, Emily Blaine-Leavitt; and his youngest, Denali Blaine died an untimely and horrific death at the scene of the crash on September 1, 2023, from fatal injuries sustained in the subject motor vehicle collision.

125.    As a direct and proximate result of the actions and inactions of Defendants as alleged herein, Douglas Leavitt and Tracey Leavitt's son, Zachary Leavitt died an untimely

1   and horrific death at the scene of the crash on September 1, 2023, from fatal injuries

2   sustained in the subject motor vehicle collision.

3            126.    The Blaine Plaintiffs and the Leavitt Plaintiffs have suffered and will

4   continue to suffer damages for the wrongful death of their respective children, but not

5   limited to, loss of society, comfort, companionship, services, and affection, and other

6   general damages.

7

8

9

10                                      **Prayer for Relief**

11          WHEREFORE Plaintiffs, and each of them, pray for judgment against Defendants,

12   and each of them, jointly and severally, as follows:

13       1.  For economic damages according to proof at the time of trial.

14

15       2.  For noneconomic damages according to proof at the time of trial.

16       3.  For punitive damages against Tesla in an amount to be proven at trial.

17       4.  For costs of suit.

18       5.  For pre-judgment interest;

19

20       6.  For such other relief as is fair, just, equitable and as the Court may deem proper.

21

22                                **DEMAND FOR JURY TRIAL**

23   Plaintiffs demand a trial by jury on all issues for which the right to a jury trial is

24

25

26

27

28

guaranteed by the U.S. Constitution, the Utah Constitution and/or Utah law.


DATED this _____ day of August 2025.

**HALLIDAY LAW**


/s/ Paul M. Halliday, Jr.
Paul M. Halliday, Jr.

*Attorneys for Plaintiffs*

UT Salt Lake County District Court - Salt Lake City

| | |
|---|---|
| **Nathan A. Blaine, Douglas Leavitt, Tracy Leavitt** | Case No.: **250907109** |
| Plaintiff/Petitioner | |
| vs. | |
| **TESLA, Inc., TESLA OF UT, INC.; et al** | AFFIDAVIT OF SERVICE OF |
| Defendant/Respondent | **Complaint; Summons** |

Received by **Chasity Corrao-Blount**, on the **24th day of November, 2025 at 6:44 PM** to be served upon **Tesla of UT, Inc.c/o CT Corporation** at **1108 E. South Union Ave, Midvale, Salt Lake County, UT 84047**.
On the **25th day of November, 2025 at 11:48 AM**, I, **Chasity Corrao-Blount**, **SERVED Tesla of UT, Inc.c/o CT Corporation** at **1108 E. South Union Ave, Midvale, Salt Lake County, UT 84047** in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **Dani Snow**, on behalf of said Corporation.
THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to Dani Snow who identified themselves as the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white female contact 25-35 years of age, 5'8"-5'10" tall and weighing 180-200 lbs with glasses.**

Service Fee Total: **$95.00**

I HEREBY CERTIFY that I am 18 years of age or older, am a resident of the State of Utah, have no interest in the above legal matter and at the time of service I endorsed by name and added the date thereto. I declare under criminal penalty of the State of Utah that the foregoing is true and correct accordance with Code 78B-18A-106 Uniform Unsworn Declarations Act.

I declare under criminal penalty under the law of Utah that the foregoing is true and correct.

Signed on ___11/25/2025___ at ___Salt Lake County___.
           Date                  State or County

| | |
|---|---|
| Chasity Corrao-Blount | |
| Printed Name | Signature |
| 1030 S 400 W Unit 1001, Salt Lake City, UT 84101 | 385-605-6333 |
| Address | Telephone Number |
| A132251 | |
| Badge or Identification Number (if applicable) | |

